**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EAG:DAL/MKM
F. #2011R00634

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 22, 2015

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Haile Cummings
Criminal Docket No. 11-303 (S-3) (NGG)

Dear Judge Garaufis:

The government respectfully submits this letter in advance of sentencing of the defendant Haile Cummings, which is scheduled for June 25, 2015. On July 9, 2014, the defendant pled guilty to Count One of the above-captioned superseding indictment, charging racketeering, in violation of 18 U.S.C. § 1962(c), and admitted to his participation in a conspiracy to murder a member of the President Street Crew (as alleged in Racketeering Act Five) and the conspiracy to rob the Lee Perla jewelry store in Hackensack, New Jersey (as alleged in Racketeering Act Eight). For the reasons set forth below, the government respectfully requests that the Court sentence the defendant within the estimated Guidelines range set forth in the parties' July 9, 2014 plea agreement ("Plea Agreement") of 97-121 months' imprisonment.

## I. Background

### A. The Six Tre Folk Nation

Since approximately 2008, the New York City Police Department ("NYPD") and the Federal Bureau of Investigation ("FBI") have been investigating members of the Six Tre Outlaw Gangsta Disciples Folk Nation set ("Six Tre Folk Nation" or "Six Tre"). The Six Tre Folk Nation operated in the Ebbets Field housing projects near the Crown Heights area of Brooklyn for several years. From approximately 2007 through 2011, Six Tre members were responsible for numerous acts of gang-related violence, including homicides, non-fatal shootings and commercial robberies both in and around Crown Heights, East Flatbush and

elsewhere. (PSR ¶¶ 5-6). The Court is aware of the violent nature of the gang and the damage it did to these communities, having presided over the trial of co-defendants and fellow gang members Yasser Ashburn, Jamal Laurent and Trevelle Merritt.

From approximately the time of its inception, the Six Tre Folk Nation was led by Ashburn, along with co-defendant Devon Rodney, who also exercised significant street-level control of the group in later years. (PSR ¶ 8). Members of the Six Tre Folk Nation held periodic gang meetings, during which the defendant and others would participate in discussions about money, new members, individual members' ranks and "violations" of the gangs rules that members may have committed. Each Six Tre member was required to contribute dues to the gang, which were used to buy guns, among other things. Upon joining the gang, members agreed to fight the gang's rivals, which included the President Street Crew and the Crips.

B. The Defendant's Participation in the Gang

The defendant was inducted as a Six Tre foot soldier in approximately 2007 after being a member of a smaller local gang that referred to itself as "Tre Six." (Tr. 391-92).[1] The defendant was known by the street name "Ruga" or "Ruger" because he was known for shooting guns. (Id. at 394). In addition, the Six Tre Folk Nation stored 5-6 guns in the defendant's apartment for use by gang members whenever they were needed. (Id. at 394, 464). For example, on September 13, 2008, Rodney directed defendant Rahleek Odom and another Six Tre member, Aaron John, to kill a leader of the President Street Crew known as "Wrinkles."[2] (PSR ¶ 13.) After retrieving a gun from the defendant's apartment, John and Odom went to President Street, where a block party was occurring in the neighborhood. (Tr. 529). The men fired into the crown, hitting a ten-year-old girl in the neck. She was taken to the hospital, where she recovered from her injuries.[3]

Similarly, in approximately October or November 2008, Six Tre members conspired to murder another member of the President Street Crew named "Specs." Once again, the Six Tre members retrieved a gun from the defendant's apartment before setting out to find and kill "Specs." Ultimately, the Six Tre members were unable to locate "Specs." In the course of this ongoing dispute with the President Street Crew, however, multiple acts of

---

[1] As used herein, "GX" refers to government exhibits introduced into evidence at the trial of co-defendants Ashburn, Laurent and Merritt in February and March 2015. "Tr." refers to the transcript of those proceedings.

[2] Paragraphs 9, 13 and 15 of the PSR erroneously suggest that the President Street crew, to which Wrinkles belonged, was part of the Crips gang. It was in fact a separate rival gang. Accordingly, the government objects to these portions of the PSR and respectfully requests that the Crips references be stricken.

[3] The girl was shot on September 13, 2008, not October 13, 2008, as indicated in the PSR. (See PSR ¶ 13).

violence were committed by both gangs, including the murder of a Six Tre member. (PSR 15).

As a member of the gang, the defendant also joined the conspiracy to kill members of the rival Crips gang, which resulted in the murder of Jameel Butler. (Tr. 382, 538–543). In addition, the defendant had direct involvement in the gang's gun violence. (Tr. 612). First, he was directed by "Duls," who was an "Original Gangsta," the position directly below the "Big Homies," to commit a shooting near President Street and Nostrand Avenue in retaliation for an earlier insult to a Six Tre member. The defendant went with another Six Tre member intending to commit the shooting. Based on the government's current information, however, it is unknown whether anyone was injured on that occasion. Second, in March of 2008, the defendant and another Six Tre member shot a young man near 42nd Street in Manhattan after the man pulled out what appeared to be a gun. The extent of the young man's injuries is unknown.[4]

The defendant also participated, with other gang members, in a conspiracy to rob jewelry stores. Between 2009 and 2010, members of Six Tre Folk Nation committed several smash-and-grab robberies of high-end jewelry stores located in New York, New Jersey and Connecticut. (PSR ¶ 17.) Rodney organized the robberies in conjunction with another individual, who was not in the gang. Rodney recruited members of Six Tre, including the defendant and co-defendants Rahleek Odom, Ricky Hollenquest and Jamal Laurent to participate in the robberies. The defendant participated with Rodney in the robbery of the Lee Perla jewelry store in Hackensack, New Jersey, as well as a conspiracy to rob a jewelry store in Manhattan. (PSR ¶¶ 18-19; Tr. 489-90, 491-96).[5]

C. The Indictment and Guilty Plea

On January 24, 2012, a grand jury in this District returned a second superseding indictment charging the defendant and eight other members of the gang, with racketeering and other crimes of violence.[6] On November 15, 2012, the grand jury returned a third superseding indictment, charging the defendant with racketeering (Count One),

---

[4] Although there was limited evidence about these incidents presented at trial, the government is prepared to prove the defendant's participation in these crimes by a preponderance of the evidence.

[5] There are minor factual errors in PSR paragraph 10, regarding crimes in which the defendant did not directly participate, including the murders of Courtney Robinson, which have no bearing on the sentencing of the defendant. The government will address these errors with Probation and the defendant and seek to have the PSR amended orally at sentencing.

[6] The defendant was not charged in the prior two indictments.

racketeering conspiracy (Count Two), use of a firearm during a crime of violence (Count Three), and Hobbs Act robbery conspiracy (Count Sixteen).

On July 9, 2014, the defendant pled guilty, pursuant to a plea agreement, to Count One of the third superseding indictment and admitted to his participation in a conspiracy to murder a member of the President Street Crew (as alleged in Racketeering Act Five) and the conspiracy to rob the Lee Perla jewelry store in Hackensack, New Jersey (as alleged in Racketeering Act Eight).

## II. Sentencing

### A. Applicable Statutory and Guidelines Provision

The PSR calculates a Guidelines range of 121-151 months based on a total offense level of 32 and a criminal history category of I. (PSR ¶ 93). In the Plea Agreement, however, the government estimated a Guidelines range of 97-121 months. The difference is due to the fact that, in addition to the Lee Perla jewelry store robbery that the defendant admitted to, the Probation Department's calculation takes into account the broader jewelry store robbery conspiracy and the corresponding loss amounts for robberies in which the defendant is not alleged to have directly participated. Although the calculation in the PSR is accurate[7], the government does not seek a sentence within the higher Guidelines range. Nevertheless, the Court can and should consider the defendant's participation in the general jewelry store robbery conspiracy, his direct participation in the conspiracy to rob a jewelry store in Manhattan, and the fact that the defendant stored the gang's guns and committed acts of violence as a member of the Six Tre Folk Nation, in its evaluation of the statutory goals of sentencing set forth in 18 U.S.C. § 3553(a). See also 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.").

### B. Discussion

In his sentencing memorandum dated June 1, 2015, the defendant seeks a sentence of time served, less than half of the low end of the advisory Guidelines range of 121-151 months. (Defendant's Sentencing Memorandum, dated June 1, 2015, at 4). Pursuant to the Plea Agreement, the government takes no position where within the Guidelines range contemplated in the Plea Agreement the sentence should fall, but respectfully submits that a sentence within the estimated range of 97-121 months is plainly warranted here.

The defendant was an active participant in a violent criminal enterprise that terrorized the residents of the Ebbets Field housing projects. He participated in the frequent acts of violence of the gang, which victimized both rivals and innocent bystanders alike. The

[7] The defendant does not object to the Guidelines calculation in the PSR.

murder conspiracy and the robbery to which the defendant admitted plainly demonstrate the grave danger to the community created by the Six Tre Folk Nation. The serious cost borne by the Ebbets Field community should be a factor in the Court's determination of an appropriate sentence in this case.

As noted in the PSR, the defendant is in criminal history category I. There can be no doubt that this category understates the defendant's prior criminal conduct. The degree to which the defendant has been able to escape punishment for his crimes over such an extended period of time results, in large part, from the fear of cooperating with law enforcement that the Six Tre Folk Nation instilled in the community through many acts of intimidation and violence. The Court should take this into account when considering the need for just punishment in this case. In addition, given the ongoing problems of gang violence and gun crimes in Brooklyn and elsewhere, a lengthy sentence would provide for general deterrence amongst gang members similarly situated to the defendant who currently believe themselves to be operating with impunity.

In his letter to the Court, the defendant seeks a sentence of time served and claims that "[w]hile some members of the group charged in this case were extremely violent, Haile's involvement was not." (Defendant's Sentencing Memorandum at 4). This is clearly belied by the fact that the defendant held guns for use by other gang members and participated in the gang's violence. Although the defendant blames his membership in this violent gang on "the neighborhood in which he lived and the absence of parental supervision," (id.), this attempt to shift responsibility for his own conduct reveals an alarming lack of remorse and a failure to understand the devastating effect he and his fellow gang members have had on the community.

The seriousness of the offense, the inherent danger such conduct poses to the community, and the need to deter the defendant specifically from returning to such conduct and others generally from committing it make clear that a sentence within the Guidelines range will not be greater than necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

III. Conclusion

For the reasons stated above, the government submits that a significant term of incarceration is important and respectfully requests that the Court enter a sentence within the advisory Guidelines range in the Plea Agreement of 97-121 months.

Respectfully submitted,

KELLY T. CURRIE
Acting United States Attorney

By: /s/
Darren LaVerne
Kristin Mace
Margaret Lee
Assistant U.S. Attorney
(718) 254-7000

cc: Clerk of the Court (NGG) (by ECF)
Defense Counsel (by ECF)